UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| BBL, INC., ALVA J. BUTLER, AND SANDRA K. BUTLER, | ) ) ) | |
| PLAINTIFFS, | ) ) | |
| VS. | ) ) | CAUSE NO. 1:13-CV-76-RLM-RBC |
| CITY OF ANGOLA, DEAN TWITCHELL, IN HIS OFFICIAL CAPACITY, AND VIVIAN LIKES, IN HER INDIVIDUAL CAPACITY, | ) ) ) ) ) | |
| DEFENDANTS. | ) | |

OPINION and ORDER

Plaintiffs BBL, Inc., Alva J. Butler, and Sandra K. Butler seek a preliminary injunction to enjoin defendants City of Angola, Dean Twitchell, and Vivian Likes from enforcing several City of Angola ordinances against BBL's Showgirl property. Angola moves for summary judgment on BBL's claim that Angola didn't provide a constitutionally sufficient number of adequate alternative sites and for judgment on the pleadings on the plaintiffs' additional claims.

I. BACKGROUND

For the preliminary injunction and summary judgment motions, the court reviewed evidence presented at the preliminary injunction hearing and submitted by the parties, including exhibits attached to the pleadings and the various motions, responses, and replies. The evidence the court reviewed for the motion for judgment on the pleadings was more restricted. The evidence scattered about the record provides the following factual background.

BBL seeks to open a sexually oriented business called Showgirl at 310 West Wendell Jacob Avenue in Angola, Indiana. Showgirl will be a venue that serves food and beverages and presents minimally clothed female performance entertainment. When BBL purchased the property, Angola's Unified Development Ordinance sections 2.35 and 2.41 allowed sexually oriented businesses within Medium to Large General Commercial (C2) Districts and prohibited sexually oriented businesses within Moderate Intensity Industrial (I2) Districts. Section 5.66 required sexually oriented businesses to obtain an improvement location permit, to be at least 1,000 feet from "residential zoning districts," and to be at least 1,000 feet away from public gathering places, such as schools, parks, libraries, and day-care centers. Sections 2.35, 2.41, and 5.66 were later modified. Section 9.05 has remained unchanged and requires any property owner who alters an existing structure or changes an existing use of property to obtain an improvement location permit.

In August 2012, before BBL closed on the property, its attorney contacted Zoning Administrator Vivian Likes to verify that the premises met the

legal requirements for a sexually oriented business. Ms. Likes responded with a letter that concluded that the Wendell Jacob Avenue site couldn't be used for a sexually oriented business because a public gathering place was to be built within 1,000 feet of the premises. BBL disagreed with Ms. Likes' assessment, and BBL closed on the sale of the premises on September 11, 2012.

Mr. Butler says renovations began immediately, including resurfacing the parking lot, re-roofing the building, and other miscellaneous maintenance. Mr. Butler and his son James Butler maintain that Building Commissioner Dean Twitchell orally permitted any construction on the premises. Mr. Butler claims he invested at least $456,222.40 in the project, including $175,000 for the property, $90,000 for the front lot, and $85,000 for the liquor license.

On September 17, 2012, the Angola Common Council adopted Angola Ordinance 1418-2012, *An Ordinance Establishing Licensing Requirements and Regulations for Sexually Oriented Businesses within the City of Angola, Indiana.* The ordinance regulated several aspects of sexually oriented businesses, including a license requirement and hours of operation, and made it "unlawful to establish, operate, or cause to be operated a sexually oriented business in the City of Angola, unless the sexually oriented business is at least 750 feet from every residence."

Building Commissioner Twitchell says he didn't visit the property until September 20, when he told Mr. Butler that installing new roofing material and demolition of interior, non-load-bearing walls didn't require a permit. Mr.

Twitchell claims that he didn't approve or disapprove Mr. Butler taking such actions. Mr. Twitchell also says he spoke with Mr. Butler about the construction approval process from the State of Indiana and City of Angola regarding interior construction and told Mr. Butler that he might need an improvement location permit for improvements to the parking lot. During the September 20 visit, Mr. Twitchell says he saw no past or present improvements to the roof of the building and no work had been done to improve the parking lot.

Mr. Twitchell visited the Showgirl premises again on October 1, 2012, and saw that workers had removed a wallboard and several studs from a load bearing wall at the east side of the banquet room and were constructing a new partition wall in the kitchen area. According to Mr. Twitchell, both a construction design release from the State of Indiana and a building permit from the City of Angola were required to perform this construction lawfully. The parties dispute when and how Mr. Twitchell told BBL to stop work on the premises until the appropriate permits were obtained, but the construction stopped at some point around this time.

BBL applied for a construction design release from the State of Indiana on October 18, 2012. BBL filed applications for a license to operate a sexually oriented business and for an improvement location permit from the City of Angola on November 7, 2012. The State granted the construction design release for the Showgirl premises on November 15, 2012. According to Mr.

Twitchell, as of September 18, 2013, BBL hadn't applied for a building permit from the City of Angola.

The Angola Common Council adopted Angola Ordinance 1425-2012, *An Ordinance Amending the Unified Development Ordinance With Respect to the Regulation of Sexually Oriented Businesses*, on November 19, 2012. The ordinance amended Angola's Unified Development Ordinance and removed sexually oriented businesses from the types of businesses allowed in C2 Districts and added them as a type of business permitted in I2 Districts. BBL's property is located in a C2 district. The amendments also prohibit sexually oriented businesses within 750 feet of residences and within 1,000 feet of residential districts, public gathering places, and other sexually oriented businesses.

In late November 2012, Building Commissioner Twitchell issued a written notice of intent to deny Showgirl's sexually oriented business license application based on the 750 feet residential buffer. On December 3, 2012, Zoning Administrator Likes sent Showgirl's attorney a letter in which she communicated: (1) multiple reasons the improvement location permit application was incomplete; (2) the proposed application didn't comply with Ordinance 1418-2012 because the business was within 750 feet of parcels containing residences; and (3) the improvement location permit sought under

the Unified Development Ordinance would be denied, even if the application was complete.

BBL appealed the written notice of intent to deny the application for a sexually oriented business license, and a hearing was held before Hearing Officer James A. McEntarfer. On February 17, 2013, Mr. McEntarfer issued a decision denying Showgirl's sexually oriented business license based on his findings that (i) the Common Council denied the licensing and regulatory ordinance after considering evidence of the negative secondary effects of sexually oriented businesses on surrounding properties, (ii) BBL didn't have a pre-existing use or vested right in the property prior to the adoption of the licensing and regulatory ordinance, (iii) the property didn't comply with the 750 feet buffer, and (iv) the City properly denied the application. BBL filed this suit alleging several violations of Indiana law and the First and Fourteenth Amendments to the United States Constitution.

## II. Motion for Partial Judgment on the Pleadings

The defendants move for judgment on the pleadings on all of BBL's claims except the claim about the constitutional adequacy of the alternative sites.

A. Legal Standard

A party may move for judgment on the pleadings after the pleadings are closed. FED. R. CIV. P. 12(C). A motion for judgment on the pleadings is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim. Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009). The court accepts all well pleaded factual allegations as true and construes all reasonable inferences in the non-moving party's favor. Scherr v. Marriott Int'l, Inc., 703 F.3d 1069, 1073 (7th Cir. 2013). The court can consider the complaint and any attached written instruments, FED. R. CIV. P. 10(c), and documents that are referred to in the pleadings and central to the claim. Williamson v. Curran, 714 F.3d 432, 436 (7th Cir. 2013). The court considered the complaint and the following attached documents: copies of the ordinances at issue, a copy of Ms. Likes' December 3, 2012 letter, BBL's improvement location permit application, and BBL's construction design release application. The court also considered the following documents that are referred to in the pleadings and central to the claim: the legislative secondary effects documents that were attached to the answer, a copy of § 5.66 of the Angola Unified Development Ordinance that was attached to BBL's response to

the motion for judgment on the pleadings, and Mr. Butler's affidavit that was attached to BBL's motion for preliminary injunction. The complaint must set "forth facts sufficient to support a cognizable legal theory." Scherr v. Marriott Int'l, Inc., 703 F.3d at 1073. Judgment should be granted "only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d at 827.

### B. Ordinance 1418-2012, the Licensing and Regulatory Ordinance

*Licensing or Zoning Ordinance*

BBL alleges in Count 1 of the complaint that the licensing and regulatory ordinance was, in substance, a zoning ordinance and so should have been adopted pursuant to Indiana Code § 36-7-4-602(b). Because the ordinance's enactment didn't comply with the statute, BBL contends, the ordinance is invalid. Angola argues the ordinance was a licensing ordinance under Indiana law, not a zoning ordinance, and was properly enacted. The City doesn't challenge BBL's assertion that the ordinance wasn't enacted according to the statutory procedure required for a zoning ordinance. Angola contends that the licensing and regulatory ordinance isn't a zoning ordinance because it doesn't divide the land into zoning districts or regulate by districts.

In Uniontown Retail #36, LLC v. Board of Comm'rs of Jackson Cnty., the county adopted an ordinance that required sexually oriented businesses to obtain a license and prohibited a sexually oriented business from operating

-8-

within 1,000 feet of a residence. 950 N.E.2d 332, 335 (Ind. Ct. App. 2011). The court of appeals examined the ordinance's title, stated purpose, and content and concluded that the ordinance was a properly enacted licensing ordinance that the county enacted "in the exercise of its broad home rule authority to regulate conduct, or use or possession of property, that might endanger the public health, safety, or welfare as authorized by [Indiana Code] § 36-8-2-4." Uniontown Retail v. Comm'rs, 950 N.E.2d at 338. The facts of this case mirror those present in Uniontown Retail. The twenty-four page Angola Ordinance 1418-2012 is titled, *An Ordinance Establishing Licensing Requirements and Regulations for Sexually Oriented Businesses within the City of Angola, Indiana.* The twenty-six page Uniontown Retail ordinance was titled *Sexually Oriented Business Ordinance.* 950 N.E.2d at 334. The purposes of the ordinances are nearly identical. The Angola ordinance's purpose begins:

> It is the purpose of this ordinance to regulate sexually oriented businesses in order to promote the health, safety, and general welfare of the citizens of the City, and to establish reasonable and uniform regulations to prevent the deleterious secondary effects of sexually oriented businesses within the City.

The Uniontown Retail ordinance's first purpose was:

> to regulate sexually oriented businesses in order to promote the health, safety and general welfare of the citizens of Jackson County, and to establish reasonable and uniform regulations to prevent the deleterious secondary effects of sexually oriented businesses within unincorporated areas of Jackson County.

950 N.E.2d at 334. The Angola ordinance contains the Common Council's findings that:

> (1) Sexually oriented businesses, as a category of commercial uses, are associated with a wide variety of adverse secondary effects including, but not limited to, personal and property crimes, prostitution, potential spread of disease, lewdness, public indecency, obscenity, illicit drug use and drug trafficking, negative impacts on surrounding properties, urban blight, litter, and sexual assault and exploitation.
>
> (2) Sexually oriented businesses should be separated from sensitive land uses to minimize the impact of their secondary effects upon such uses, and should be separated from other sexually oriented businesses, to minimize the secondary effects associated with such uses and to prevent an unnecessary concentration of sexually oriented businesses in one area.
>
> (3) Each of the foregoing negative secondary effects constitutes a harm which the City has a substantial government interest in preventing and/or abating. . . .

The Uniontown Retail ordinance contained similar findings:

> (2) Sexually oriented businesses should be segregated from one another and from religious institutions, school, parks, residences and residential neighborhoods to protect the public health, welfare and safety because sexually oriented businesses, as a category of commercial uses, are associated with a wide variety of adverse secondary effects, including but not limited to, personal and property crimes, prostitution, potential spread of disease, lewdness, public indecency, illicit drug use, drug trafficking, illicit and unsanitary sexual activity, negative impacts on property values, blight, litter, and sexual assault and exploitation.
>
> (3) Each of the foregoing negative secondary effects constitutes a harm which Jackson County has a substantial governmental interest in abating and/or preventing in the future.

950 N.E.2d at 334-335. The Angola ordinance's operative effect is to require sexually oriented businesses to obtain a license and prohibits their operation

within 750 feet of a residence. The <u>Uniontown Retail</u> ordinance's effect was the same, except the distance requirement was 1,000 feet. <u>Id.</u> at 335. Like the <u>Uniontown Retail</u> ordinance, the Angola ordinance also contains provisions regarding the licensing, inspection, and hours of operation of sexually oriented businesses.

Angola Ordinance 1425-2012, which amended the City's Unified Development Ordinance, changed the type of district in which sexually oriented businesses were permitted from I2 Districts to C2 Districts. Ordinance 1425-2012 also requires sexually oriented businesses to be separated from residential zoning districts and public gathering places by at least 1,000 feet and from residences by at least 750 feet. Similarly, a subsequent ordinance in <u>Uniontown Retail</u> specified that a sexually oriented business was a permitted use in certain districts and barred a sexually oriented business from being located within 1,000 feet of any residence. 950 N.E.2d at 335. The <u>Uniontown Retail</u> court distinguished the earlier ordinances with only the residential buffer requirement from the subsequent ordinance that changed the districts because the later ordinance defined "where a sexually oriented business *could* be located." <u>Id.</u> The court found the earlier licensing ordinances "do not specify zones, districts, or areas where sexually oriented *are* allowed, or the 'quintessential zoning' matters of 'what type of land use was allowed and where.'" <u>Id.</u> at 338.

BBL argues that the ordinance is a zoning measure because it dictates what type of land use is permitted and where. BBL claims the court of appeals' Uniontown Retail decision conflicts with the decision of the Indiana Supreme Court in City of Carmel v. Martin Marietta Materials, Inc. because an ordinance with a residential buffer "dictate[s] what type of land use is permitted and where." City of Carmel v. Martin Marietta Materials, Inc., 883 N.E.2d 781, 787 (Ind. 2008). The Uniontown Retail court analyzed City of Carmel and distinguished between ordinances that permit and ordinances that prohibit. Uniontown Retail, 950 N.E.2d at 337-338. An ordinance affecting the districts where a business is allowed to locate dictates what type of land use is permitted. An ordinance that simply prohibits a business from operating within a certain distance from a residence doesn't dictate what type of land use is permitted. The distinction might be a brittle one, but the similarities between the Uniontown Retail and Angola ordinances are remarkable. Angola Ordinance 1418-2012 doesn't specify the districts where sexually oriented businesses are allowed and so, isn't a zoning ordinance under Indiana law. The ordinance didn't have to be enacted pursuant to the statutory procedure for zoning ordinances. The defendants are entitled to judgment on this claim.

*Administrative Appeal Provisions*

The second count of the complaint alleges that the suspension, revocation, and appeal provisions of the licensing and regulatory ordinance violate Indiana Code §§ 36-1-6-9 and 36-7-4-918.1. The parties don't dispute

any of the facts relating to this claim. Angola first argues that BBL lacks standing to challenge the suspension, section eight, and revocation, section nine, provisions of the ordinance. Angola says because Showgirl was denied a sexually oriented business license, it has no license that could be suspended or revoked. BBL doesn't respond to this issue. BBL hasn't sustained, and isn't in immediate danger of sustaining, an injury from the suspension and revocation provisions, and the court agrees that BBL doesn't have standing to challenge those two sections. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992); Pence v. State, 652 N.E.2d 486, 488 (Ind. 1995).

Section ten of the licensing and regulatory ordinance defines appellate procedures relating to the denial, suspension, or revocation of a sexually oriented business license. Under section ten, if the Building Commissioner issues a written notice of intent to deny, suspend, or revoke a license, the denial, suspension, or revocation becomes a final decision if the party doesn't request a hearing within ten days after delivery of the notice. If the party timely requests a hearing, the City will hold a hearing at which the aggrieved party can be represented by counsel and present argument, evidence, and witnesses. At the hearing, the Building Commissioner bears the burden of proving grounds for denying, suspending, or revoking the license.

Angola argues that cities have a broad home rule authority to adopt licensing regulations for the operation of businesses such as sexually oriented businesses, and that Indiana courts have upheld similar ordinances. Angola

cites cases that address ordinances regulating sexually oriented businesses, but those cases don't analyze provisions of the ordinances specifying the appeal procedure when a license is denied. *See* Uniontown Retail #36, LLC v. Board of Comm'rs of Jackson Cnty., 950 N.E.2d 332, 335 (Ind. Ct. App. 2011) (sexually oriented business required to obtain a license and prohibited from operating within 1,000 feet of a residence); Plaza Grp. Props., LLC v. Spencer Cnty. Plan Comm'n, 877 N.E.2d 877, 881 (Ind. Ct. App. 2007) (sexually oriented business required to obtain a license and prohibited from operating within 1,000 feet of a residence); Andy's Rest. & Lounge, Inc. v. City of Gary, 466 F.3d 550, 552 (7th Cir. 2006) (license, hours of operation, and open-booth requirement for sexually oriented businesses). Further, none of the cited cases analyze Indiana Code § 36-1-6-9 or § 36-7-4-918.1. Uniontown Retail #36, LLC v. Board of Comm'rs of Jackson Cnty., 950 N.E.2d at 334 (improperly enacted zoning ordinance, nonconforming use, First Amendment); Plaza Grp. Props., LLC v. Spencer Cnty. Plan Comm'n, 877 N.E.2d at 879-880 (nonconforming use, First Amendment); Andy's Rest. & Lounge, Inc. v. City of Gary, 466 F.3d at 552 (First Amendment). Only Uniontown Retail analyzes the home rule authority, but it does so in the context of the residential buffer in a licensing ordinance. 950 N.E.2d 332, 338 (Ind. Ct. App. 2011). Pursuant to the ordinance in Andy's Restaurant & Lounge, "[d]enial, suspension, or revocation of a license only occur[ed] after a hearing at which the aggrieved party [had] the opportunity to be heard." 466 F.3d 550, 552 (7th Cir. 2006). If the result of

-14-

that hearing was an adverse action, the party could appeal to a court of competent jurisdiction. Id. The Angola ordinance has a similar hearing aspect, but Andy's Restaurant & Lounge didn't analyze the provision beyond a cursory mention in the fact summary.

BBL contends that under Indiana Code § 36-1-6-9, Angola can't enforce the ordinance through an administrative hearing. Indiana Code § 36-1-6-9 subsections (a) through (c) provide that:

> (a) The legislative body of a county or municipality may adopt an ordinance providing that certain other ordinances may be enforced through a proceeding before an administrative body of the county or municipality.

> (b) An ordinance adopted under subsection (a) must designate the following:
> (1) The ordinances that may be enforced through an administrative proceeding.
> (2) The administrative body before which the proceeding may be brought.

> (c) An ordinance may not be designated under subsection (b) for enforcement through an administrative proceeding unless the ordinance restricts or prohibits actions harmful to the land, air, or water, governs use of the public way, or governs the standing or parking of vehicles.

IND. CODE § 36-1-6-9. Angola first argues that Indiana Code § 36-1-6-9 doesn't apply to a licensing ordinance that doesn't impose a fine for violations. Pursuant to Indiana Code § 36-1-6-9(d)(2), an administrative body enforcing an ordinance through a proceeding designated under subsection (b) "may not impose a penalty other than a fine in an amount within the limit set forth in [Indiana Code §] 36-1-3-8(10)." IND. CODE § 36-1-6-9. Angola claims the

-15-

licensing and regulatory ordinance doesn't impose a fine, and if the penalty for violating an ordinance is anything other than a fine, Indiana Code § 36-1-6-9 doesn't apply. But an ordinance that falls within the requirements of the statute – found in subsections (a), (b), and (c) – can impose a fine, and only a fine, as the penalty for violations of the ordinance. The statute doesn't require that a fine be imposed as a penalty for violating such an ordinance, presumably no penalty would be acceptable. BBL claims the Angola ordinance does impose a penalty of license denial, suspension, or revocation, and a business seeking a license to operate is penalized by denial, suspension, or revocation of a license.

BBL reads subsection (c) as limiting administrative review to ordinances that restrict or prohibit actions harmful to the land, air, or water, that govern the use of the public way, or that govern the standing or parking of vehicles. The regulation of sexually oriented businesses doesn't fall within any of these categories, so BBL concludes the ordinance can't be enforced through an administrative body. BBL cites no case law to support its contention and, indeed, the court was unable to find any cases that interpret the code section. The court agrees that an ordinance regulating sexually oriented businesses doesn't fall within the categories specified in Indiana Code § 36-1-6-9(c), but whether the ordinance is enforced through an administrative proceeding deserves further analysis.

-16-

Title 36 of the Indiana Code doesn't define the terms "administrative body" and "administrative proceeding." Pursuant to section ten of the ordinance, upon the Building Commissioner's written notice of intent to deny, suspend, or revoke a license, the party seeking the license has ten days to request a hearing that will then be held within approximately thirty days. At the hearing, the aggrieved party has the opportunity to be represented by counsel and present argument, evidence, and witnesses. The Building Commissioner bears the burden of proving grounds for denying, suspending, or revoking the license. The decision-maker is the Hearing Officer who "shall issue a final written decision, including specific reasons for the decision pursuant to this ordinance, to the respondent within five (5) days after the hearing." The ordinance doesn't identify the Hearing Officer or describe his or her qualifications or relationship to the Building Commissioner or the City of Angola. Angola claims Indiana Code § 36-1-6-9 is permissive, not mandatory, and a city can adopt an ordinance for enforcing certain ordinances through administrative proceedings, but isn't required to do so. Nevertheless, this scenario walks and quacks like an administrative proceeding.

But if the party seeking the license doesn't request a hearing, the Building Commissioner's written notice of intent to deny, suspend, or revoke a license becomes a final decision on the thirtieth day after it is issued; that decision is subject to judicial review. The party challenging the Building Commissioner's decision, therefore, isn't compelled to take part in an

administrative proceeding before seeking judicial review. The party can simply forgo the hearing and wait thirty days for the decision to become final. Consequently, the licensing and regulatory ordinance doesn't violate Indiana Code § 36-1-6-9.

BBL also argues that the licensing and regulatory ordinance is a zoning ordinance, so the provision that allows the appeal of license decisions to a hearing officer violates Indiana Code § 36-7-4-918.1(1), which requires the board of zoning appeals to review an administrative official's decision under a zoning ordinance. As discussed earlier, Angola Ordinance 1418-2012 doesn't specify the districts where sexually oriented businesses are allowed and isn't a zoning ordinance. Accordingly, licensing decisions aren't made pursuant to a zoning ordinance or subject to Indiana Code § 36-7-4-918.1(1). The defendants are entitled to judgment because the appeal provision of the licensing and regulatory ordinance doesn't violate either Indiana Code § 36-1-6-9 or § 36-7-4-918.1.

*Indiana Liquor Laws*

In Count 3 of the complaint, BBL alleges the licensing and regulatory ordinance violates Indiana Code § 7.1-3-9-6, which proscribes local ordinances from preempting state liquor laws. Angola responds that the ordinance doesn't mention or regulate alcohol or liquor and so doesn't violate the statute. None of the facts relating to this claim are disputed by the parties.

Angola argues that the regulation of sexually oriented businesses has traditionally been a local matter in Indiana and is an area that the state hasn't chosen to occupy to the exclusion of municipal regulation. The Uniontown Retail court held that the sexually oriented business licensing ordinance was enacted by the county "in the exercise of its broad home rule 'authority to regulate conduct, or use or possession of property, that might endanger the public health, safety, or welfare,' as authorized by" the Indiana statute that permits local government units the authority to regulate dangerous conduct or property. 950 N.E.2d 332, 338 (Ind. Ct. App. 2011). The Home Rule Act grants local government units "all the powers that they need for the effective operation of government as to local affairs," but the Act doesn't grant unlimited powers to local units. Fort Wayne Women's Health v. Board of Comm'rs, Allen Cnty., Ind., 735 F. Supp. 2d 1045, 1051 (N.D. Ind. 2010) (quoting IND. CODE § 36-1-3-2). Under Indiana law, an ordinance impermissibly conflicts with a statute if the ordinance "prohibit[s] that which a statute expressly permits." City of Indianapolis v. Clint's Wrecker Serv., Inc., 440 N.E.2d 737, 746 (Ind. Ct. App. 1982). "If the state has not chosen to occupy an area to the exclusion of municipal regulation, the City may impose additional, reasonable regulations, and may supplement burdens imposed by non-penal state law, provided the additional burdens are logically consistent with the statutory purpose." Id. at 746-747. The Home Rule Act denies local units "[t]he power to regulate conduct

that is regulated by a state agency, except as expressly granted by statute." IND. CODE § 36-1-3-8(a)(7).

Angola Ordinance 1418-2012 establishes licensing requirements and regulations for sexually oriented businesses located within the City of Angola. Pursuant to the ordinance, sexually oriented businesses must obtain a license to operate in the City, must monitor the premises to prevent loitering, and can't operate within 750 feet of a residence. The ordinance imposes restrictions on the hours of operation and the exhibition of sexual films. Prohibited conduct at a sexually oriented business under the ordinance includes nudity, engaging in sexual activity, or touching a customer. Semi-nude employees must remain six feet from all patrons and on a stage that is at least eighteen inches from the floor in a room of at least 600 square feet.

In its complaint, BBL alleges that the licensing and regulatory ordinance violates Indiana Code § 7.1-3-9-6, which states:

> A city or town shall not enact an ordinance which in any way, directly or indirectly, regulates, restricts, enlarges, or limits the operation or business of the holder of a liquor retailer's permit as provided in this title. A city or town shall not enact an ordinance covering any other business or place of business for the conduct of it in such a way as to prevent or inhibit the holder of a liquor retailer's permit from being qualified to obtain or continue to hold the permit, or operate to interfere with or prevent the exercise of the permittee's privileges under the permit.

IND. CODE § 7.1-3-9-6. BBL claims the Angola ordinance restricts a liquor retailer permit holder from presenting female performance entertainment protected by the First Amendment, when, where, and how a liquor retailer

-20-

permit holder may operate, and who may be a liquor retailer permit holder. In response to the motion for judgment on the pleadings, BBL also claims the ordinance conflicts with another Indiana statute and two administrative code sections. BBL claims the ordinance violates Indiana Code § 7.1-3-1-14, that allows alcohol serving businesses to stay open later, 3:00 a.m., than the ordinance, midnight. The ordinance also restricts the conduct of the dancers more than section three of Rule 16.1 regarding the restrictions on nudity in exhibition or professional dancing found in the Alcohol and Tobacco Commission Title of the Indiana Administrative Code that prohibits "a permittee [from] knowingly allow[ing] a person to engage in sexual intercourse, deviate sexual conduct, as defined in [Indiana Code §] 35, to appear in a state of nudity or to fondle the genitals of himself or another person while on the permittee's licensed premises." 905 IND. ADMIN. CODE 1-16.1-3. Finally, BBL claims the ordinance restricts the layout of the premises, but the Alcohol and Tobacco Commission must approve floor plans for liquor retailer permit holders that allow dancing on the premises. 905 IND. ADMIN. CODE 1-16.1-1.

Angola argues the licensing and regulatory ordinance doesn't regulate alcohol or liquor and makes no reference to liquor retailer permit holders. To be precise, the ordinance prohibits certain things the cited statute and administrative code sections allow. City of Indianapolis v. Clint's Wrecker Serv., Inc., 440 N.E.2d 737, 746 (Ind. Ct. App. 1982). For example, Indiana Code § 7.1-3-1-14 allows liquor retailer permit holders to stay open later, and under

the Alcohol and Tobacco Commission administrative code sections, a dancer on liquor retailer permit holders' premises may touch customers. But the Angola ordinance regulates sexually oriented businesses, not liquor retailer permit holders. The sexually oriented business here just happens to also hold a liquor retailer permit.

In O'Banion v. State ex rel. Shively, 253 N.E.2d 739 (Ind. App. 1969), the court of appeals upheld a county ordinance that allowed businesses in a zoning district to sell alcoholic beverages only if the business obtained the approval of the county board of zoning appeals. The appellant argued that the ordinance was preempted by the Alcoholic Beverage Act of 1935 that stated: "No ordinance of any city or town shall in any way regulate, restrict, enlarge or limit the operation or business of the holder of any liquor retail permit or his privileges under such permit as prescribed by this act, directly or indirectly . . . ." O'Banion v. State, 253 N.E.2d at 744. Today's Indiana Code § 7.1-3-9-6 mirrors that language. The O'Banion court found the local ordinance regulated the use of real property, while the state alcoholic beverage statutes regulated the sale of alcohol. O'Banion v. State, 253 N.E.2d at 742. The ordinance didn't "regulate, restrict, enlarge or limit the operation or business of the holder of a liquor retail permit or his privileges under such permit as prescribed by [the statute]," and the ordinance wasn't inconsistent with the purpose of the statute. O'Banion v. State, 253 N.E.2d at 745. BBL argues that it only challenges the regulatory portions of the Angola ordinance, and not a local land

use ordinance, but this assertion overlooks the O'Banion court's distinction between what the ordinance regulated and what the statute regulated. Angola Ordinance 1418-2012 regulates sexually oriented businesses, while the state alcoholic beverage statutes regulate the manufacture, sale, possession, and use of alcohol and alcoholic beverages. The ordinance doesn't restrict the operation of the liquor retail permit holder's business in any way with respect to the sale of alcohol or liquor, and the ordinance doesn't affect the liquor retail permit itself. Indiana's court of appeals later distinguished the O'Banion ordinance from an ordinance in City of Fort Wayne v. Kotsopoulos, 704 N.E.2d 1069 (Ind. Ct. App. 1999), that expressly required businesses to obtain a local permit before selling alcoholic beverages during festivals. State liquor laws preempted the ordinance and rendered it invalid because the city's ordinance imposed a local permit requirement upon holders of state-issued alcohol permits. Id. at 1072. The ordinance and the statute both regulated alcohol. The Angola ordinance regulates sexually oriented businesses, not alcohol.

Finally, Angola argues the ordinance's purpose is consistent with the state's alcoholic beverage statutory purposes. The general purposes of the Indiana alcoholic beverage statutes are "(1) To protect the economic welfare, health, peace, and morals of the people of this state. (2) To regulate and limit the manufacture, sale, possession, and use of alcohol and alcoholic beverages. (3) To regulate the sale, possession, and distribution of tobacco products. (4) To provide for the raising of revenue." IND. CODE § 7.1-1-1-1. The legislature

intended for Indiana Code § 7.1-3-9-6, the preemption statute, "to prevent cities or towns from circumventing the required waiting period for repealing an ordinance or contravening the [Alcoholic Beverage Commission's] authority to validly issue permits." Town of Leo-Cedarville v. Indiana Alcoholic Beverage Comm'n, 754 N.E.2d 1041, 1051 (Ind. Ct. App. 2001). The primary purpose of Angola Ordinance 1418-2012 is "to regulate sexually oriented businesses in order to promote the health, safety, and general welfare of the citizens of the City, and to establish reasonable and uniform regulations to prevent the deleterious secondary effects of sexually oriented businesses within the City." The statutes and ordinance share a goal of protecting the public's health and, in general, the welfare of citizens, but in two different ways. Importantly, the statutes and ordinance regulate two separate things – the manufacture, sale, possession, and use of alcohol and alcoholic beverages and sexually oriented businesses. Nothing in the Angola ordinance's purpose conflicts with the alcoholic beverage statutes' general purpose. The ordinance's regulation of sexually oriented businesses also doesn't affect the Alcoholic Beverage Commission's authority to validly issue permits and so doesn't contravene the purpose of Indiana Code § 7.1-3-9-6.

Judgment is appropriate because BBL can't prove any set of facts that would support its claim that Indiana liquor laws preempt the licensing and regulatory ordinance.

C. First Amendment

In Count 5 of the complaint, BBL alleges that Ordinance 1418-2012, the licensing and regulatory ordinance, and Ordinance 1425-2015, the Unified Development Ordinance amendments, violate the First Amendment in various ways. BBL contends (and Angola doesn't disagree) that the female performance entertainment Showgirl intends to present is expressive conduct protected by the First Amendment. G.M. Enters., Inc. v. Town of St. Joseph, Wis., 350 F.3d 631, 636 (7th Cir. 2003) (citing City of Erie v. Pap's A.M., 529 U.S. 277, 289 (2000)). The Fourteenth Amendment's Due Process Clause applies the First Amendment's protections to the states. Ben's Bar, Inc. v. Village of Somerset, 316 F.3d 702, 707 (7th Cir. 2003). Angola claims the Supreme Court and Seventh Circuit Court of Appeals have upheld similar ordinances under the three-part test outlined in City of Renton v. Playtime Theatres, Inc., 475 U.S. 41 (1986), and reaffirmed in City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425 (2002). The first question for a court is whether the ordinance is a total ban on expression or merely a time, place, and manner regulation. City of Renton v. Playtime Theatres, Inc., 475 U.S. at 46. An ordinance that results in a total ban is invalid; if the ordinance is a time, place, and manner regulation, the court next decides whether the regulation is content-based or content-neutral. Id. at 46-47. A content-based restriction must advance a compelling state interest and be narrowly drawn to be the least restrictive means to further the interest. Sable Comm'ns of California, Inc. v. F.C.C., 492 U.S. 115,

126 (1989). A content-neutral restriction must be narrowly tailored to serve a substantial state interest while not unreasonably limiting alternative avenues of communication. City of Renton v. Playtime Theatres, Inc., 475 U.S. at 47.

Neither ordinance entirely prohibits sexually oriented businesses or businesses presenting semi-nude female performance entertainment from operating in Angola. Id. at 46. Ordinance 1418-2012, the licensing and regulatory ordinance, establishes a license requirement and general regulations for sexually oriented businesses, such as hours of operation and a 750 feet residential buffer. Ordinance 1425-2012 amended Angola's Unified Development Ordinance to permit sexually oriented businesses in the I2 District and prohibit them in the C2 District. The amendments also prohibit sexually oriented businesses within 750 feet of residences and within 1,000 feet of residential districts, public gathering places, and other sexually oriented businesses. The ordinances are time, place, and manner regulations.

### Content-Based or Content-Neutral

BBL argues the ordinances are unconstitutional as content-based restrictions on speech and expression. Angola claims the ordinances are content-neutral restrictions designed to prevent negative secondary effects. A content-based regulation is one enacted for the purpose of restraining expression on the basis of its content. City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 46-47 (1986). Content-neutral regulations of sexually oriented businesses are justified without reference to the content of the regulated

expression and instead address the negative secondary effects caused by such expression. Ben's Bar, Inc. v. Village of Somerset, 316 F.3d 702, 723 (7th Cir. 2003); *see also* City of Renton v. Playtime Theatres, Inc., 475 U.S. at 48. The text of the ordinance, any preamble or express findings of the Angola Common Council, and studies and information of which the members of the Common Council were clearly aware are all relevant in determining whether the ordinance targets the content of the expression or the negative secondary effects. Ben's Bar, Inc. v. Village of Somerset, 316 F.3d at 723 n.28.

This is the first purpose of Angola Ordinance 1418-2012:

It is the purpose of this ordinance to regulate sexually oriented businesses in order to promote the health, safety, and general welfare of the citizens of the City, and to establish reasonable and uniform regulations to prevent the deleterious secondary effects of sexually oriented businesses within the City.

The first purpose of Angola Ordinance 1425-2012 is essentially identical. Angola claims these findings were based on voluminous documents, including judicial decisions, land use studies, affidavits, and crime impact reports. The findings and rationale sections of Ordinances 1418-2012 and 1425-2012 state:

Based on evidence of the adverse secondary effects of adult uses presented in hearings and in reports made available to the Common Council, and on findings, interpretations, and narrowing constructions incorporated in the cases of [eleven Supreme Court cases] and [forty-three other cases] and based upon reports concerning secondary effects occurring in and around sexually oriented businesses, including, but not limited to [twenty-seven reports] the Common Council finds:
(1) Sexually oriented businesses, as a category of commercial uses, are associated with a wide variety of adverse secondary effects

-27-

> including, but not limited to, personal and property crimes, prostitution, potential spread of disease, lewdness, public indecency, obscenity, illicit drug use and drug trafficking, negative impacts on surrounding properties, urban blight, litter, and sexual assault and exploitation. . . .

The Common Council found "that the cases and documentation relied on in this ordinance are reasonably believed to be relevant to said secondary effects" and incorporated "its stated findings and legislative record related to the adverse secondary effects of sexually oriented businesses, including the judicial opinions and reports related to such secondary effects" into the ordinances.

Angola submitted an index to the legislative secondary effects documentation and copies of the underlying cases and reports with its answer to the complaint. The case law consulted by the Common Council is compiled in a single document that is 723 pages long and doesn't include an index of the specific cases. A cursory search revealed a 2011 and a 2012 case, so presumably some of the case law is recent, and from a variety of courts, from the Supreme Court of the United States to the Circuit Court of the Fourth Judicial Circuit in Effingham County, Illinois. The record also contains thirty-eight reports spanning 1977 through 2012, and one of which is a summary of the key reports on the negative secondary effects of sexually oriented businesses. Eight of the reports were published in 2008 or later. The reports focus on many different cities, both large, such as Indianapolis, Indiana and Los Angeles, California, and small, such as Clarksville, Indiana and Metropolis, Illinois. The documents were made a part of the official record for the Common

Council's meeting and were, in turn, incorporated into the ordinances. The ordinances also specifically list fifty-four cases and twenty-seven reports.

The ordinances' stated purpose, the underlying documents the Common Council relied on and incorporated into the ordinances, and the Common Council's findings and rationale ratified in the text of the ordinances all support Angola's contention that the ordinances were enacted to combat negative secondary effects.

BBL claims Angola's asserted justification is disingenuous because the ordinances were passed in response to Showgirl's plan to operate in the City. BBL cites cases in which the timing of the ordinance enactment was suspicious and the cities relied on little or no evidence of negative secondary effects. In Discotheque, Inc. v. City Council of Augusta, 449 S.E.2d 608, 609 (Ga. 1994), the court found an ordinance's preamble to be self-serving conclusory hearsay because the city council didn't rely on any evidence to support the purported negative secondary effects it was addressing. BBL also cites Doctor John's, Inc. v. City of Sioux City, Iowa, 305 F. Supp. 2d 1022, 1030 (N.D. Iowa 2004), in which the senior city planner testified that he had reviewed a number of studies that were done by various cities throughout the country regarding the negative secondary effects of stores like the one Doctor John's planned to open. The court found no evidence that the senior city planner conveyed his understanding or summaries of the studies to members of the City Council or the City Attorney and no evidence that the members of the City Council or the

-29-

City Attorney reviewed such studies. Id. The ordinance didn't state a purpose to combat secondary effects of adult entertainment businesses or any purpose at all. Id. at 1036. The only evidence in the record indicated that the ordinance was passed in direct response to Doctor John's intention to open a store and comply with the city's other requirements. Id. Consequently, the court concluded Doctor John's was likely to succeed on its claim that the ordinances were content-based. Id. at 1037. In 2302 N. Truman Entertainment Management, LLC v. City of Pevely, No. 4:11CV171, 2012 WL 6705868, at *14 (E.D. Mo. Dec. 26, 2012), the court found no evidence of adverse secondary effects from take-home only businesses such as the Pure Pleasure Megacenter store. The city provided the court miscellaneous research materials that opined negatively on adult entertainment but didn't mention any legally cognizable adverse secondary effects. Id. at *16. The court found the city tried to camouflage its motivation by alleging a pretextual interest in addressing adverse secondary effects when the ordinance actually was enacted to suppress constitutionally protected expression. Id. at *19. Finally, a court found the city's destruction of the tape recordings of the City Council's closed-session meetings in which the ordinances at issue were discussed to be "ill-conceived, illegal, and unconstitutional actions in targeting and attempting to trample the plaintiff's First Amendment rights" in Doctor John's, Inc. v. City of Sioux City, Iowa, 486 F. Supp. 2d 953, 956 (N.D. Iowa 2007). BBL doesn't allege Angola destroyed any evidence from the Common Council's meetings.

-30-

In none of BBL's cited cases did the city rely on the substantial evidence about the negative secondary effects of sexually oriented businesses presented by the City of Angola. The court agrees with BBL that the timing of the enactment of the Angola ordinances is suspicious. Angola claims similar ordinances were inadvertently changed in the 2008 overhaul of the zoning system, and the 2012 changes merely restored protection that the City never meant to lose. Although Angola asserts the timing of the enactment of the ordinances was coincidental, the timing seems to be in response to BBL's plans to open and operate Showgirl. Nonetheless, the City did its research and relied on many cases, studies, and reports regarding the negative secondary effects that occur around sexually oriented businesses. The records in BBL's cited cases lacked sufficient evidence of any other motive but to prevent the opening of a sexually oriented business.

Angola argues the motives of the Common Council and its attorneys are irrelevant to a First Amendment analysis and cites DiMa Corp. v. Town of Hallie. 185 F.3d 823, 828 (7th Cir. 1999) ("The actual motives of those who enacted the ordinance are irrelevant to [the court's] First Amendment analysis."). BBL cites Turner Broad. Sys., Inc. v. F.C.C., 512 U.S. 622 (1994), and emphasizes that the court must not accept the purported legislative motivations at face value. Id. at 645-646 ("[E]ven a regulation neutral on its face may be content based if its manifest purpose is to regulate speech because of the message it conveys."). Both parties are correct. The court doesn't "ask

whether the motives of the [Common Council] can be justified as content-neutral time, place, and manner restrictions, but rather whether the ordinance itself can be so justified." DiMa Corp. v. Town of Hallie, 185 F.3d at 829. Even construing all reasonable inferences in BBL's favor, Angola has presented sufficient evidence of negative secondary effects that was relied on by the Common Council and outweighs the suspicious timing of the enactment of the ordinances. The ordinances are content-neutral and subject to intermediate scrutiny.

*Substantial State Interest*

A content-neutral restriction must be narrowly tailored to serve a substantial state interest while not unreasonably limiting alternative avenues of communication. City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 50 (1986). The parties address the sufficiency of the alternative sites in the summary judgment discussion that follows. BBL argues the ordinances don't further any important, substantial, or compelling state interest. Angola argues the ordinances further the substantial state interest of preventing negative secondary effects.

To decide whether an ordinance serves a substantial state interest, the court examines the "quality and quantum of evidence" the city relied on and whether that research reasonably links the regulated activity to the adverse secondary effects. G.M. Enters., Inc. v. Town of St. Joseph, Wis., 350 F.3d 631, 638-639 (7th Cir. 2003). A municipality can rely on any relevant information,

including judicial decisions, land use studies, police reports, news articles, and affidavits of investigators. *See* Ben's Bar, Inc. v. Village of Somerset, 316 F.3d 702, 725 (7th Cir. 2003) (village's evidentiary record of judicial decisions and studies and reports from different cities fairly supported the village's rationale). "The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." City of Renton v. Playtime Theatres, Inc., 475 U.S. at 51-52. The regulating body isn't required to rely on research that targets the exact activity it wants to regulate. G.M. Enters., Inc. v. Town of St. Joseph, Wis., 350 F.3d at 639. The fifty-four judicial decisions and thirty-eight reports the Angola Common Council relied on and incorporated into the ordinances must reasonably link the negative secondary effects of semi-nude dancing establishments to personal and property crimes, prostitution, potential spread of disease, lewdness, public indecency, obscenity, illicit drug use and drug trafficking, negative impacts on surrounding properties, urban blight, litter, and sexual assault and exploitation. The court groups the negative secondary effects into four categories: increased crime, drug use and trafficking, sexual assault and exploitation, and decline in property values.

　　Angola argues the Common Council relied on many judicial decisions that upheld sexually oriented business regulations similar to those in the

Angola ordinances. "A city may rely upon previous judicial opinions evaluating secondary effects the city desires to regulate." Andy's Rest. & Lounge, Inc. v. City of Gary, 466 F.3d 550, 555 (7th Cir. 2006) (citing City of Erie v. Pap's A.M., 529 U.S. 277, 297 (2000)). A residential buffer, Angola emphasizes, was upheld in City of Renton v. Playtime Theatres, Inc., 475 U.S. at 43 (1,000 feet of any residential zone, single- or multiple-family dwelling, church, park, or school), and a total nudity ban was upheld in City of Erie v. Pap's A.M., 529 U.S. 277, 296 (2000). Angola points out that a dancer-to-patron buffer was upheld in G.M. Enters., Inc. v. Town of St. Joseph, Wis., 350 F.3d at 636, 640, and an hours of operation restriction was upheld in Andy's Rest. & Lounge, Inc. v. City of Gary, 466 F.3d at 556. All four cases were included in the judicial decisions the Common Council incorporated as a part of the legislative record.

Angola argues that the Common Council also relied on studies and summaries of studies conducted by other cities that showed negative secondary effects. BBL responds that the ordinances are unconstitutional pursuant to Shelby County, Alabama v. Holder, 133 S. Ct. 2612 (2013), because the studies the Common Council relied on are largely from 1970 through 1990. The Supreme Court struck down the law in Shelby County in part because it was based on forty-year old data that would be quite different if compiled today. Id. at 2631. Angola incorporated thirty-eight reports, including

-34-

a summary of key reports, in the legislative record for the ordinances. The following are the most current reports:

1. Metropolis, Illinois, Investigator Affidavits Documenting Paid Sexual Conduct in Adult Entertainment Club, 2011-2012
2. El Paso, Texas, Twenty-One Affidavits re: Illicit Sex Acts and Unsanitary Conditions in Adult Cabarets and Adult Bookstores, 2008
3. Clarksville, Indiana, Investigator Report re: Live Sexual Conduct in Adult Entertainment Establishment Booth Areas, 2009
4. New Albany, Indiana, Investigator Report re: Illicit Sexual Conduct at Gentlemen's Club, 2009
5. Memphis Alcohol Commission Records re: Strip Club Conduct Violations, 2005-2011
6. *Correlates of Current Transactional Sex among a Sample of Female Exotic Dancers in Baltimore, MD*, JOURNAL OF URBAN HEALTH: BULLETIN OF THE NEW YORK ACADEMY OF MEDICINE, February 15, 2011
7. *Rural Hotspots: The Case of Adult Businesses,* 19 CRIMINAL JUSTICE POLICY REVIEW 153 (2008)
8. *Crime Related Secondary Effects of Sexually-Oriented Businesses: Report to the Jackson County Legislature*, May 9, 2008

Those eight reports were compiled from 2008 to the present; nine other reports were compiled between 2003 and 2007. Thus, seventeen reports, or 46 percent, are based on data from the past ten years, and eight reports, or 22 percent, are based on data from the past five years. The remaining twenty reports are more than ten years old. Unlike the forty-year old data that was the sole basis of the law in Shelby County, 133 S. Ct. at 2631, the Angola Common Council relied on new and old data.

Next, BBL relies on Annex Books, Inc. v. City of Indianapolis, Indiana, 581 F.3d 460 (7th Cir. 2009), in which a city's consideration of foreign sources and a dated study was insufficient evidence to support the city's hours of

operation ordinance. Importantly, none of the evidence in <u>Annex Books</u> concerned the type of ordinance at issue – hours of operation of book or video outlets with 25 percent or more of their sales from sex-related materials – but instead the studies and judicial decisions concerned adult establishments with live entertainment and/or private viewing booths. <u>Id.</u> at 462-463. Further, none of the evidence showed that an increase in hours of operation at such establishments was associated with more crime. <u>Id.</u> at 463. Under intermediate scrutiny, "any empirical study of morals offenses near any kind of adult establishment in any city" doesn't justify "every possible kind of legal restriction in every city." <u>Id.</u> BBL claims Angola can't rely on pre-packaged secondary effects studies and studies that primarily concern nude dancing.

Angola contends the studies the Common Council relied on are relevant because they concern adult businesses that offer live sex shows, private viewing booths, or both. Angola emphasizes that a city doesn't have to rely on evidence about the exact activity the city wants to regulate. <u>G.M. Enters., Inc. v. Town of St. Joseph, Wis.</u>, 350 F.3d 631, 639 (7th Cir. 2003). Still, the city must rely on research that reasonably links the regulated activity to the adverse secondary effects. While most of the reports relied on by the Angola Common Council involve adult businesses in general, at least fourteen (including seven of the eight most recent reports, compiled from 2008 to the present) address adult cabarets directly. Many of the reports examined increases in crime surrounding a sexually oriented business. The 2008 report

*Crime Related Secondary Effects of Sexually-Oriented Businesses: Report to the Jackson County Legislature* went so far as to conclude that it is a scientific fact that sexually oriented businesses, including erotic dance clubs, have significant crime-related secondary effects. The report doesn't define erotic dance clubs. High levels of both drug use and transactional sex were found among the female exotic dancers who participated in the 2011 study discussed in *Correlates of Current Transactional Sex among a Sample of Female Exotic Dancers in Baltimore, MD*, and David Sherman, a former adult cabaret manager, testified before a Michigan House Committee in 2000 about the "dark, subculture of sex, drugs, alcohol, and prostitution" in stripclubs. A majority of the dancers surveyed in *Stripclubs According to Strippers: Exposing Workplace Sexual Violence* reported sexual abuse and exploitation by strip club customers. The dancers in the study performed a variety of attractions including "topless dancing, nude dancing, table dancing, couch dancing, lap dancing, wall dancing, shower dancing and bed dancing." The negative impact of a sexually oriented business, including a gentleman's club/cabaret, on surrounding properties is discussed in *Survey of Appraisers, Fort Worth & Dallas, Effects of Land Uses on Surrounding Property Values* from September 2004. These five reports didn't focus specifically on nude dancing and referred generically to exotic dancers and adult cabarets, which could focus on either nude or semi-nude dancers or both.

-37-

A court isn't required to re-weigh the evidence considered by a legislative body and doesn't have the authority to substitute its judgment as to whether a regulation is the best option for a city. G.M. Enters., Inc. v. Town of St. Joseph, Wis., 350 F.3d 631, 639-640 (7th Cir. 2003). The court must simply decide whether the legislative body relied on evidence "reasonably believed to be relevant to the problem addressed." Id. at 640. The research on which the Angola Common Council relied is current, extensive, relevant to the ordinance, and reasonably supported the Common Council's rationale. Relatively recent reports directly link the negative secondary effects outlined in the ordinances – increased crime, drug use and trafficking, sexual assault and exploitation, and decline in property values – to the specific type of adult business at issue here – adult cabarets, a category that includes semi-nude dancing establishments.

If the evidence fairly supports the city's rationale, as it does here, the challenger must cast doubt on the rationale to shift the burden back to the city to supplement the record and justify the ordinance. G.M. Enters., Inc. v. Town of St. Joseph, Wis., 350 F.3d at 639 (citing City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425, 438-439 (2002)). If the challenger doesn't cast doubt on the rationale, the city has met its burden. Id. Accordingly, BBL argues that it should be given the opportunity to cast doubt on the City's rationale and the cases' applicability at the summary judgment stage. But BBL had the opportunity to cast doubt on the City's rationale in its response to the motion for judgment on the pleadings. Angola claims the burden shifting language

simply confirms that the city met the evidentiary standard set forth in City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 51-52 (1986), that a city must rely on evidence that it reasonably believed to be relevant to a link between the protected speech and the substantial government interest. Whether this standard was met, Angola contends, is a legal question. The court agrees.

To challenge the town's rationale in response to a summary judgment motion, the plaintiff in G.M. Enterprises, Inc. v. Town of St. Joseph, Wisconsin presented evidence that included a study that found that most of the studies the town collected were fundamentally unsound and methodologically flawed, a study that concluded the county hadn't experienced any major problems with adult entertainment establishments, an affidavit stating that the property values near the club had increased over time, and a statement by the sheriff that the volume of police calls generated by the club were unrelated to nude dancing. 350 F.3d 631, 636 (7th Cir. 2003). The court of appeals concluded that although the evidence showed the town "might have reached a different and equally reasonable conclusion regarding the relationship between adverse secondary effects and sexually oriented businesses, it is not sufficient to vitiate the result reached in the [town's] legislative process." Id. at 639. After the city met its burden in ABCDE Operating, LLC v. City of Detroit, No. 10-13435, 2011 WL 3607072, at *4-5 (E.D. Mich. Aug. 16, 2011), the court held that a generic argument that sexually oriented businesses don't cause negative secondary effects, based on a letter and several articles, was insufficient to

-39-

rebut the evidence of secondary effects and didn't cast doubt on the city's rationale. The court granted the city's motion for judgment on the pleadings. Id. at *5. In <u>Enlightened Reading, Inc. v. Jackson County, Missouri</u>, No. 08-0209, 2009 WL 792492, *at 3 (W.D. Mo. Mar. 24, 2009), the opposing party didn't offer evidence disputing the county's factual findings, but argued the evidence didn't support the county's rationale because the evidence didn't consider its specific type of establishment. The court concluded that the county relied on evidence regarding reasonably similar businesses that was reasonably relevant to the secondary effects the county sought to address, the opposing party didn't cast doubt on the county's rationale, the county consequently met its evidentiary burden to justify its substantial government interest, and judgment on the pleadings was appropriate. Id. *at 4, 9. Conversely, summary judgment was denied in <u>Erie Boulevard Triangle Corp. v. City of Schenectady</u>, 250 F. Supp. 2d 22 (N.D.N.Y. 2003), when the parties disputed the validity of a specific report upon which the city had relied. Id. at 34 ("Whether the . . . Report is a reliable source upon which the City could reasonably rely is a factual issue inappropriate for resolution on summary judgment.").

BBL challenged Angola's rationale because the documents were outdated, largely from 1970 through 1990, and irrelevant, primarily concerning nude dancing. The court addressed both arguments and neither argument cast doubt on the Angola Common Council's rationale. Alternatively, BBL argues that leave to amend the complaint is proper to allow BBL to assert an

additional theory that the Angola Common Council didn't review or rely on the cited secondary effects materials and instead relied on a consultant's skewed presentation that created a false impression that a reasonable justification for the ordinances existed. BBL didn't present this argument in response to Angola's motion for judgment on the pleadings, and the court declines to address possible future motions. The fifty-four judicial decisions and thirty-eight reports the Angola Common Council relied on and incorporated into the ordinances reasonably link the asserted negative secondary effects – increased crime, drug use and trafficking, sexual assault and exploitation, and decline in property values – to semi-nude dancing establishments. The evidence supports the Common Council's rationale. The ordinances serve a substantial state interest.

### Narrow Tailoring & Overbreadth

A content-neutral restriction also must be narrowly tailored to serve the substantial state interest. City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 52 (1986). A narrowly tailored regulation is one that isn't substantially broader than necessary to achieve the government interest the regulation furthers. Ward v. Rock Against Racism, 491 U.S. 781, 800 (1989). Angola says that BBL argues the ordinances aren't narrowly tailored because they would adversely impact Showgirl's profits. Angola continues that while the First Amendment requires nude and semi-nude dancing establishments be given a reasonable opportunity to disseminate speech, the First Amendment isn't

concerned with the economic impact of regulations and cites <u>Ben's Bar, Inc. v. Village of Somerset</u> to support this proposition. 316 F.3d 702, 727 (7th Cir. 2003) (citing <u>City of Renton v. Playtime Theatres, Inc.</u>, 475 U.S. at 54).

BBL doesn't address this argument, arguing instead that the ordinances aren't narrowly tailored because they restrict clothed dancing. For the same reason, BBL argues the licensing and regulatory ordinance is overbroad. A statute is overbroad if a realistic danger exists that the statute will significantly compromise protected speech of parties not before the court. <u>Pleasureland Museum, Inc. v. Beutter</u>, 288 F.3d 988, 996 (7th Cir. 2002). "[P]articularly where conduct and not merely speech is involved, . . . the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." <u>Broadrick v. Oklahoma</u>, 413 U.S. 601, 615 (1973). Angola simply claims the ordinances present no such danger, so the claim must fail.

BBL compares the Angola ordinances to the ordinance that regulated clothed dancers in <u>R.V.S., LLC v. City of Rockford</u>, 361 F.3d 402 (7th Cir. 2004). The City of Rockford defined "clothed" as "fully opaque clothing covering over primarily the genitalia, pubic region, buttocks and if the person is female, the portions of the breast below the top of the areola," <u>Id.</u> at 404-405; a separate sexually oriented business ordinance applied to nude and semi-nude dancers. <u>Id.</u> at 404. The court struck down the ordinance on other grounds, but commented on the expansiveness of the ordinance that stretched beyond

nude and semi-nude dancing to clothed dancing. Id. at 415. The court concluded that some forms of clothed dancing may initiate adverse secondary effects similar to nude and semi-nude dancing and may be regulated if the city offers sufficient evidence to support its motivation to combat those secondary effects. Id.

Angola Ordinances 1418-2012 and 1425-2012 regulate adult cabarets where live, semi-nude conduct occurs. Semi-nudity is defined in the ordinances as follows:

> The showing of the female breast below a horizontal line across the top of the areola and extending across the width of the breast at that point, or the showing of the male or female buttocks. This definition shall include the lower portion of the human female breast, but shall not include any portion of the cleavage of the human female breasts exhibited in a bikini, dress, blouse, shirt, leotard, or similar wearing apparel provided the areola is not exposed in whole or in part.

A semi-nude dancer under the Angola ordinances may have bare breasts below the areola or bare buttocks, whereas a clothed dancer pursuant to the City of Rockford ordinance wore fully opaque clothing in those areas. *See also* Ben's Bar, Inc. v. Village of Somerset, 316 F.3d 702, 708 (7th Cir. 2003) (semi-nudity defined as "the exposure of a bare male or female buttocks or the female breast below a horizontal line across the top of the areola at its highest point with less than a complete and opaque covering"). The Angola ordinances regulate semi-nude dancing, as that term is generally understood in the nude and semi-nude dancing context, and don't regulate clothed dancing like the City of Rockford

ordinance. Ordinances that regulate semi-nude dancing establishments aren't substantially broader than necessary to achieve the substantial government interest of reducing the adverse secondary effects associated with semi-nude dancing. For the same reasons, the Angola ordinances aren't overly broad regulations that reach clothed dancing.

### Vagueness

BBL claims the ordinances contain numerous terms and phrases that are impermissibly vague and ambiguous, and the ordinances have been applied to the plaintiffs in an unconstitutionally vague manner. Angola argues Showgirl lacks standing to assert a vagueness claim. BBL concedes in its response that the City's application of the ordinances is required before the vagueness claims are ripe, thus entitling the defendants to judgment on those claims.

### Prior Restraint

BBL alleges in Count 4 of the complaint that Angola's improvement location permit requirement is an impermissible prior restraint on First Amendment activity. BBL asserts that § 5.66 of the Angola Unified Development Ordinance was a prior restraint because getting an improvement location permit was a prerequisite to opening and operating a sexually oriented business. Angola responds that the former version of § 5.66 was repealed, so claims for injunctive relief are moot, and the former version wasn't applied to BBL, so BBL suffered no injury as a result.

Under Article III of the United States Constitution, a federal court's jurisdiction is limited to live cases in which the parties have a legally cognizable interest in the outcome and actual, ongoing controversies. Stotts v. Community Unit Sch. Dist. No. 1, 230 F.3d 989, 990 (7th Cir. 2000). "[R]epeal of a contested ordinance moots a plaintiff's injunction request, absent evidence that the City plans to or already has reenacted the challenged law or one substantially similar." Federation of Adver. Indus. Representatives, Inc. v. City of Chicago, 326 F.3d 924, 930 (7th Cir. 2003). Angola asserts that the repeal of the improvement location permit requirement from § 5.66 renders moot BBL's request for declaratory or injunctive relief from the code section. Angola says the code section was repealed almost two months before BBL filed its applications on November 7, 2012, but Angola Ordinance 1425-2012, which amended § 5.66, was passed on November 19, 2012, after BBL filed its applications. Nonetheless, the improvement location permit requirement in § 5.66 has been repealed since then, and the City has no reason to reenact the requirement when § 9.05 contains the same requirement. Since no sexually oriented businesses are located in Angola, any that locate there in the future will have to comply with § 9.05 as a change in the preexisting use of the property. BBL's claim for injunctive relief regarding the prior version of § 5.66 is moot.

Next, Angola contends the improvement location permit requirement in § 5.66 wasn't applied to BBL, so BBL wasn't injured by the requirement and isn't

entitled to damages. Damages as a result of the loss of First Amendment rights must stem from a particular injury and can't be based upon an abstract value of a constitutional right. City of Watseka v. Illinois Pub. Action Council, 796 F.2d 1547, 1559 (7th Cir. 1986) (citing Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 310 (1986)). BBL argues that it was harmed when Ms. Likes intentionally delayed her decision so the ordinance that repealed § 5.66 could be enacted. On November 7, 2012, when BBL filed its applications for a license to operate a sexually oriented business and for an improvement location permit, § 9.05 required an improvement location permit because Showgirl wanted to alter a structure and change the existing use of the property. Ms. Likes' December 3, 2012 decision letter to BBL invoked the improvement location permit requirement of § 9.05. Ms. Likes took less than a month to issue a decision on the application, but BBL claims Mr. Twitchell indicated the decision should only take a few days. Section 5.66 had been repealed by the time Ms. Likes sent the letter.

Before Angola Ordinance 1425-2012 amended § 5.66 on November 19, 2012, Angola could have applied § 5.66 to BBL's application and required an improvement location permit because BBL was a sexually oriented business or Angola could have applied § 9.05 and required an improvement location permit so BBL could alter the structure and change the existing use of the property. The reason for the requirement could have been different, but the end result – an incomplete application – would have been the same. BBL wasn't injured by

the delay or the prior version of § 5.66 that wasn't applied to its application. For the same reason, BBL's argument that Angola applied shifting objective criteria to its application that created a prior restraint, similar to the facts in Gammoh v. City of Anaheim, 73 Cal. App. 4th 186, 191 (Cal. Ct. App. 1999), collapses. Section 5.66 was repealed, but the improvement location requirement never changed.

BBL next argues § 9.05 of the Angola Unified Development Ordinance is a prior restraint on protected First Amendment activity because it contains an improvement location permit requirement. BBL claims the permit application and review process vests the Zoning Administrator with unbridled discretion to decide whether an application is complete or whether the project complies with the City's code and doesn't specify a period of time for a decision on the application or a ruling on an appeal.

An unconstitutional prior restraint typically is either "a scheme that places unbridled discretion in the hands of a government official or agency" or a restriction "that fails to place limits on the time within which the decisionmaker must issue the license." FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 225-226 (1990). BBL's improvement location permit application wasn't denied; the City deemed it incomplete. Without first being denied a license, a facial challenge to an ordinance is permitted in the First Amendment context "whenever a licensing law gives a government official or agency substantial power to discriminate based on the content or viewpoint of speech

-47-

by suppressing disfavored speech or disliked speakers." City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 759 (1988). For a facial challenge, "[t]he law must [also] have a close enough nexus to expression, or to conduct commonly associated with expression, to pose a real and substantial threat of the identified censorship risks." Id. An ordinance of general application, with neutral criteria, that is "not aimed at conduct commonly associated with expression and [does] not permit licensing determinations to be made on the basis of ongoing expression or the words about to be spoken" is unlikely to result in censorship. Id. at 760-761.

Angola contends that on its face, the improvement location permit requirement has no nexus to expression or to conduct commonly associated with expression, and it is a typical land-use regulation directed at public health and safety. Consequently, Angola argues, a facial attack to the ordinance is inappropriate. Section 9.05 provides that, "[a]n Improvement Location Permit shall be required prior to permanent construction, installation, addition, alteration, or relocation of a structure; prior to permanent alteration to the land; and prior to establishment of a new land or change [to] an existing land use." The text of § 9.05 doesn't mention speech, or expression, or sexually oriented businesses. The requirement applies to both residents and businesses located in the City of Angola. Examples of projects requiring an improvement location permit include installation of a swimming pool, modification of a structure's height, construction of a detached garage, and installation of a well

or septic system. The ordinance notes some exceptions to the requirement, such as repairs to an existing structure and installation of flag poles.

Angola further argues that Showgirl's proposed structural alterations and change of the property's preexisting use triggered the improvement location permit requirement, not that Showgirl is a sexually oriented business. Angola's brief refers to modifications specified in BBL's application for a construction design release from the State of Indiana: "conversion of existing reception hall to a bar/restaurant" and "project involves structural modifications and construction of new interior walls." The improvement location permit application BBL submitted to the City, in contrast, simply describes the project as "Interior renovations for a Gentlemen's Club." Ms. Likes' December 3, 2012 letter to BBL invoked the improvement location permit requirement of § 9.05 based on a finding that BBL's application "triggers the ILP requirement under Section 9.05 because it indicates a change in the existing land use (*see* Section 9.02.D)." A change in existing land use would have been evident from BBL's application since the location had been used as a restaurant, and the application specifies that it will now be used as a "Gentlemen's Club." Angola argues that the only action taken pursuant to § 9.05 was to inform BBL that the application was incomplete. The letter stated in part:

> [T]he application needs to include a "detailed description" of how the change in land use will affect those elements that are not already addressed in the attachments to the ILP application

(concerning how the change in use will affect parking, average daily trips, and courier service).

Additionally, the application is not complete with regard to information concerning the proposed signs for the project.

1. There is a drawing of a "Showgirl" sign that is 11 feet high by 54 feet wide. Please indicate what kind of sign this is proposed to be and please indicate, on the site plan, where it is proposed to be erected.

2. The Front Elevation for the project (plan page A2.1) appears to show a sign on the roof. Please note that signs are not permitted on roofs. (*See* Section 5.67.F.1.g.)

3. Section 5.73.A.1.a sets forth the limit on cumulative square footage for permanent signs, which is based on the length of the front façade. The proposed signs appear to exceed that limit.

The two reasons given for the application's incompleteness don't implicate protected speech or expression. The sign requirements are content-neutral and simply describe location and size regulations for signs. The requirements could be imposed on any other type of business located in the City of Angola and aren't specific to sexually oriented businesses. As Angola argues, nothing suggests the enforcement of a complete application requirement was different from what has been enforced against other businesses.

BBL argues the improvement location permit requirement is a prerequisite to operating a sexually oriented business, which is precisely the type of permit courts have found to be a prior restraint. The three ordinances in the cases cited by BBL all targeted behavior associated with speech – selling

materials depicting sexual conduct, indoor theaters, and entertainment. BBL cites Special Souvenirs, Inc. v. Town of Wayne, 56 F. Supp. 2d 1062, 1086 (E.D. Wis. 1999), in which the court analyzed the town's zoning scheme as a prior restraint because the ordinance specified that bookstores selling materials depicting sexual conduct had to obtain a conditional use permit before lawfully engaging in protected speech. BBL also cites Kraimer v. City of Schofield, 342 F. Supp. 2d 807, 816 (W.D. Wis. 2004), in which the court analyzed an ordinance as a prior restraint because the ordinance allowed indoor theaters in a zoning district in some circumstances and required government permission to engage in expression. Finally, BBL cites TJ's South, Inc. v. Town of Lowell, 895 F. Supp. 1124, 1133 (N.D. Ind. 1995), in which this court found an ordinance that required eating-and-drinking establishments to obtain permission from the town in the form of a special exception before presenting entertainment to be an unconstitutional prior restraint. Angola's improvement location permit requirement targets construction and alteration of structures or land and establishment or change in land use at both commercial and residential properties. The requirement applies to any type of business or home and doesn't have any nexus to expression or to conduct commonly associated with expression.

Finally, BBL cites Lady J. Lingerie, Inc. v. City of Jacksonville, 176 F.3d 1358, 1362 (11th Cir. 1999), in which the Eleventh Circuit court of appeals held that a city's nine run-of-the-mill criteria for a zoning exception, such as

compatibility with contiguous uses, environmental impact, and effect of pedestrian traffic, weren't precise and objective and so gave too much discretion to public officials when applied to adult businesses. Our court of appeals, however, hasn't viewed licensing schemes as harshly as the Eleventh Circuit. BC Tavern of Kenosha, Inc. v. City of Kenosha, No. 11-C-959, 2013 WL 592888, at *6 (E.D. Wis. Feb. 14, 2013), reconsideration denied, No. 11-C-959, 2013 WL 3879911 (E.D. Wis. July 26, 2013). In MacDonald v. City of Chicago, our court of appeals upheld Chicago's parade permitting ordinance that required a government official to consider whether the proposed parade route would substantially or unnecessarily interfere with traffic, whether there were sufficient city resources to mitigate the disruption, whether a sufficient number of peace officers were available to police and protect lawful participants and non-participants, and whether the concentration of persons would prevent proper fire and police protection or ambulance service. 243 F.3d 1021, 1026 (7th Cir. 2001). The court concluded the ordinance didn't authorize any judgment about the content of the speech and limited the government official's discretion based on content-neutral criteria. Id. at 1031-1032. Consequently, the threat of censorship characteristic of a prior restraint was remote, and the ordinance, the court decided, should be analyzed as a time, place, and manner licensing system. Id. at 1032. The City of Milwaukee refused to renew the liquor license of the tavern that presented exotic dancing in Blue Canary Corp. v. City of Milwaukee, 251 F.3d 1121, 1122 (7th Cir. 2001). Our court of

-52-

appeals concluded the "sale of liquor is unexceptionally a licensed activity even when the licensed restaurant or tavern provides entertainment for its customers," so the annual liquor license renewal requirement wasn't a prior restraint because it didn't concern the content of speech. Id. at 1123.

Permanent construction, modifications to a structure, permanent alteration to land, establishment of a new land use, or change to an existing land use generally are activities that require a permit. Angola's improvement location permit requirement applies to all businesses and residences in the City of Angola and applies to BBL due to the business's planned structural alterations and change of the property's preexisting use, not its status as a sexually oriented business. "[A] law requiring building permits is rarely effective as a means of censorship." City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 761 (1988). The improvement location permit requirement is content-neutral and not a prior restraint. A facial attack to the § 9.05 improvement location permit requirement is inappropriate, and the section should be treated as a time, place, and manner regulation.

### D. 42 U.S.C. § 1988

In Count 7 of the complaint, BBL claims it is entitled to an award of costs and attorney fees as a prevailing party pursuant to 42 U.S.C. § 1988. Angola argues that BBL isn't entitled to costs and fees under § 1988 because its claims fail as a matter of law. BBL hasn't responded to Angola's argument,

and the complaint doesn't specify under which provision BBL would be a prevailing party. Nevertheless, one issue survives summary judgment. BBL likely hopes to invoke 42 U.S.C. § 1983 that creates liability when a person acting under the color of law subjects a citizen to the deprivation of constitutional rights and privileges. Although BBL doesn't mention the statute in the § 1988 claim, § 1983 and the City's actions "under color of state law" are mentioned several times in the complaint. A successful § 1983 action entitles the prevailing party to seek attorney's fees pursuant to § 1988. Generously construing all reasonable inferences in BBL's favor, Angola isn't entitled to judgment on BBL's claim for costs and attorney fees.

### E. Personal Liability of Vivian Likes

BBL claims in Count 6 of its complaint that Angola Zoning Administrator Vivian Likes is personally liable for the violation of its rights under the First and Fourteenth Amendments. Angola maintains that Ms. Likes is entitled to qualified immunity for her acts taken as the City's Zoning Administrator. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983. An individual is liable under § 1983 if she knowingly, willfully,

-54-

or at least recklessly caused the constitutional deprivation by her action or failure to act. Rascon v. Hardiman, 803 F.2d 269, 273-274 (7th Cir. 1986). "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Biddle v. Martin, 992 F.2d 673, 675 (7th Cir. 1993) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Two considerations govern a government official's entitlement to qualified immunity on a personal liability claim. First, the plaintiff must show that the law was clear in relation to the specific facts confronting the public official when she acted, and second the court evaluates the objective legal reasonableness of the official's conduct, that is whether reasonably competent officials would agree on the application of the clearly established right to a given set of facts. Biddle v. Martin, 992 F.2d at 675.

BBL argues that its pleadings demonstrate Ms. Likes's personal liability under 42 U.S.C. § 1983, and its response doesn't address the issue of qualified immunity. The complaint alleges that Ms. Likes gave false disqualifying criteria to an attorney for BBL and participated in the denial of the improvement location permit. Ms. Likes purposefully took these actions, BBL contends, to preclude Showgirl from operating and in reckless disregard and willful indifference to BBL's constitutional rights.

-55-

Angola claims Ms. Likes is entitled to qualified immunity because BBL can't show a constitutional violation or that she violated any clearly established rights. Angola contends that in August 2012, Ms. Likes commented on the Unified Development Ordinance in response to a question from Showgirl's attorney and her response was the allegedly false disqualifying criteria. Angola maintains that BBL disagreed with Ms. Likes' response and formed its own opinion. BBL alleges that when Ms. Likes provided false disqualifying criteria to its attorney, she disregarded BBL's constitutional rights, but BBL doesn't allege this action violated the First Amendment. The complaint must set "forth facts sufficient to support a cognizable legal theory." Scherr v. Marriott Int'l, Inc., 703 F.3d 1069, 1073 (7th Cir. 2013). Mr. Butler's affidavit asserts that after reviewing the correspondence from Ms. Likes, he was convinced she was wrong and the premises were properly zoned for a sexually oriented business and there were no disqualifying use or residentially zoned parcels within 1,000 feet of the premises. BBL apparently didn't rely on Ms. Likes' allegedly false statements or act accordingly.

Secondly, BBL claims Ms. Likes participated in the denial of its improvement location permit in violation of its constitutional rights. Ms. Likes denied Showgirl's incomplete improvement location permit. As discussed earlier, the § 9.05 improvement location permit requirement that Ms. Likes applied to BBL's application was a generally applicable ordinance with no nexus to speech. Application of the improvement location permit requirement

or the denial of BBL's incomplete application didn't violate the First
Amendment. Even construing all reasonable inferences in BBL's favor and
assuming Ms. Likes provided false disqualifying criteria, without a
constitutional violation from either action, Ms. Likes can't be liable under §
1983. Ms. Likes is entitled to judgment as to her individual liability.

## F. Hearing Officer's Decision

BBL also appeals the hearing officer's decision. BBL argues that the
licensing and regulatory ordinance violates the First and Fourteenth
Amendments and Indiana law for the reasons stated in the complaint and that
Angola didn't show that the residences located within 750 feet of Showgirl's
proposed location were lawful in their respective zoning districts. Angola says
the constitutional and state law claims should be affirmed for the reasons
already discussed and substantial evidence supported the hearing officer's
decision. Angola also argues that BBL waived its claim about the lawfulness of
the residences within 750 feet of the location because BBL didn't raise it before
the hearing officer. Regardless, Angola continues, the residences' compliance
with the zoning code is irrelevant to the 750 feet buffer from "every residence."
BBL doesn't respond to this argument, but challenges the hearing officer's
decision as based on an unconstitutional ordinance and directs the court to
the pages of its response that discuss the argument that the ordinances were
enacted in order to suppress BBL's impending First Amendment activity. The

court analyzed the parties' constitutional arguments earlier, and because the plaintiff doesn't address the remaining argument in the response brief, it is waived. Wojtas v. Capital Guardian Trust Co., 477 F.3d 924, 926 (7th Cir. 2007); Greater Indianapolis Chapter of N.A.A.C.P. v. Ballard, 741 F. Supp. 2d 925, 938 (S.D. Ind. 2010).


G. Conclusion

The licensing and regulatory ordinance doesn't specify the districts where sexually oriented businesses are allowed. Thus, the ordinance isn't a zoning ordinance under Indiana law and didn't need to be enacted pursuant to the statutory procedure for zoning ordinances. The ordinance doesn't violate either Indiana Code § 36-1-6-9 or § 36-7-4-918.1 and isn't preempted by Indiana liquor laws. The defendants are entitled to judgment on BBL's state law claims.

The Angola Common Council relied on sufficient evidence that reasonably links negative secondary effects to semi-nude dancing establishments and outweighed the suspicious timing of the enactment of the ordinances. Consequently the ordinances are content-neutral and serve a substantial state interest. The ordinances aren't substantially broader than necessary to achieve that government interest, so the ordinances are narrowly tailored. The ordinances aren't overly broad regulations, and the vagueness claim is not yet ripe. The repeal of the improvement location permit requirement from § 5.66 renders BBL's request for declaratory or injunctive

-58-

relief from that code section moot, and BBL wasn't injured by the slight delay of the decision or by the prior version of § 5.66 that wasn't applied to its application. Section 9.05's improvement location permit requirement isn't a prior restraint on protected First Amendment activity, and the section should be treated as a time, place, and manner regulation. But for the sufficiency of the number of adequate alternative sites argument addressed in the partial motion for summary judgment that follows, defendants are entitled to judgment on BBL's First Amendment claims.

At this point, BBL's claim for an award of costs and attorney fees as a prevailing party pursuant to 42 U.S.C. § 1988 remains. Ms. Likes is entitled to judgment as to her individual liability, and defendants are entitled to judgment on the appeal of the hearing officer's decision.

### III. Motion for Partial Summary Judgment

The defendants move for summary judgment on the plaintiffs' claim that the ordinances at issue are unconstitutional content-neutral restrictions because they don't provide enough adequate alternative sites for sexually oriented businesses.

### A. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). The court draws all reasonable inferences from the evidence in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). For a factual dispute to preclude summary judgment, the dispute must be material and genuine. Carroll v. Lynch, 698 F.3d 561, 564 (7th Cir. 2012). The underlying substantive law determines whether a factual dispute is material. Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 248). A genuine factual dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248). "Once the moving party puts forth evidence showing the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." Id.

## B. Adequate Number of Alternative Sites

"'[C]ontent-neutral' time, place, and manner regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 47 (1986). The City's asserted substantial government interest was addressed earlier. "[T]he First Amendment requires only that [a city] refrain from effectively denying [sexually oriented businesses] a reasonable opportunity to open and operate [a sexually oriented business] within the city." Id. at 54. Municipalities are allowed to zone "strip

joints, adult book stores, and like erotic sites" out of the residential and the classier commercial areas of the city. Blue Canary Corp. v. City of Milwaukee, 270 F.3d 1156, 1158 (7th Cir. 2001) (collecting cases). BBL claims that fewer than a dozen sites or less than 1 percent of the City acreage is generally considered inadequate and cites Dia v. City of Toledo, 937 F. Supp. 673, 678 (N.D. Ohio 1996). In this circuit, however, a reasonable opportunity to disseminate the speech doesn't hinge on the percentage of land available under the ordinance, but is a fact-specific inquiry and depends on any relevant evidence. North Ave. Novelties, Inc. v. City of Chicago, 88 F.3d 441, 445 (7th Cir. 1996). Angola has a population of 8,612, as recorded in the 2010 census, and a land area of 6.34 square miles. The parties agree that the licensing and regulatory ordinance applied to Showgirl's application and required a sexually oriented business to be on a parcel at least 750 feet from parcels containing a residence, measured parcel line to parcel line.

Angola submitted the affidavit of James Myers, the Engineering Assistant for the City of Angola, in which Mr. Myers used Geographic Information System data and AutoCAD software to determine the parcels that are legally available for a sexually oriented business under both Ordinance 1418-2012 and Ordinance 1425-2012. Ordinance 1425-2012 changed the zoning district for sexually oriented businesses from C2 Districts to I2 Districts, included the 750 feet residential buffer, and required that sexually oriented business structures be at least 1,000 feet from residential zoning districts and parcels containing

public gathering places, such as schools, parks, playgrounds, libraries, religious institutions, day care centers, or public structures, measured from the proposed structure to the parcel line of these land uses. Mr. Myers concluded that twenty-nine complete parcels comprising 95.52 acres and twelve partial parcels comprising 14.7 acres met the criteria. Thirty-nine of the available parcels are located inside Angola city limits and constitute 6.61 percent of the commercial and industrial acreage inside the City. The City has zoning jurisdiction over the two other parcels that are located in the extra-territorial area beyond its boundary. The total forty-one parcels contain 110.22 acres and constitute 5.34 percent of the commercial and industrial acreage in Angola's zoning jurisdiction. The City didn't include the land available in Steuben County that surrounds its boundaries. Angola claims Showgirl is the only business seeking to open a sexually oriented business in the City and is the first such business to do so in decades. Under these circumstances, Angola argues, the supply of available sites greatly exceeds the demand and Showgirl has no competition seeking a similar location. Angola contends that given the City's small size and population, rural location, and lack of adult businesses seeking sites, the available 110 acres are more than adequate.

BBL counters that under Ordinance 1418-2012, no land was available in Angola for a sexually oriented business and summary judgment on the sufficiency of the alternative sites is appropriate in BBL's favor. BBL submitted a joint affidavit from Bruce McLaughlin, AICP, land use planner, Certified

Zoning Inspector, and local government consultant, and Steven Fernandez, CCM, Geographic Information System Analyst and Certified Cadastral Mapper. Mr. Fernandez performed a Geographic Information System analysis of Angola applying the 750 feet residential buffer of Ordinance 1418-2012 and the requirement of the former § 5.66 that sexually oriented businesses be separated from other such businesses, from residential zoning districts, from public gathering places, such as schools, parks, playgrounds, libraries, religious institutions, day-care centers, and from public structures by at least 1,000 feet. Mr. McLaughlin and Mr. Fernandez concluded that "there is no land in the City of Angola that is zoned C-2 and that meets the segregation requirements of the Unified Development Ordinance as amended by Ordinance 1412-2012 [sic] and prior to the effective date of Ordinance 1425-2012."

Because a genuine dispute as to the number of available sites exists, neither party is entitled to summary judgment. The existence of adequate alternative sites for sexually oriented businesses is required for a content-neutral time, place, and manner regulation to pass intermediate scrutiny City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 47 (1986), so the disputed fact is therefore material to the First Amendment claim. Based on the expert affidavits and the expert testimony at the preliminary injunction hearing, a reasonable jury could return a verdict for either party. The affidavit of Angola's expert doesn't make clear whether the expert included available sites in the C2 district, the I2 district, or both. The affidavit and testimony of BBL's expert isn't

clear as to whether the 750 feet residential buffer, the other restrictions found in § 5.66, or the combination of the two led to the expert's conclusion that no available sites existed.

Angola argues in its reply brief that Ordinance 1418-2012 didn't limit sexually oriented businesses to the C2 District, and while technically true, the district requirement was instead located in the Angola Unified Development Ordinance § 2.35 (that was amended by Ordinance 1425-2012), in reality, a sexually oriented business couldn't lawfully operate in a different zoning district at that time. To determine whether adequate alternative sites existed at the time BBL submitted its application, locations outside District C2 would be irrelevant. Presumably, the sexually oriented business would have been required to comply with all of Angola's ordinances and not just the 750 feet residential buffer in the licensing and regulatory ordinance. The parties strongly dispute a material fact regarding the sufficiency of the alternative sites and summary judgment is inappropriate on this part of the plaintiffs' First Amendment claim.


## C. Vested Rights

BBL also urges the court not to reach the alternative sites question because a vested right to use the property for the operation of a sexually oriented business would trump the ordinances and render the constitutional challenge irrelevant. BBL argues that summary judgment is appropriate,

-64-

pursuant to Federal Rule of Civil Procedure 56(f)(1), on its claim that it had a vested right under Indiana law to own and operate Showgirl. Rule 56(f)(1) allows a court to grant summary judgment for a nonmovant after giving notice and a reasonable time to respond. FED. R. CIV. P. 56(f)(1).

BBL claims that its nonconforming rights vested before Angola enacted the licensing and regulatory ordinance, Ordinance 1418-2012, or the Unified Development Ordinance amendments, Ordinance 1425-2015. "Proof of a lawful pre-existing nonconforming use constitutes a defense to an action alleging the violation of a zoning ordinance." Wesner v. Metropolitan Dev. Comm'n of Marion Cnty., 609 N.E.2d 1135, 1138 (Ind. Ct. App. 1993). "A nonconforming use of property is a use that lawfully existed prior to the enactment of a zoning ordinance and continues after the ordinance's effective date even though it does not comply with the ordinance's restrictions." Plaza Grp. Props., LLC v. Spencer Cnty. Plan Comm'n, 877 N.E.2d 877, 884 (Ind. Ct. App. 2007). Whether a business had a vested right in the property before the use of the property became nonconforming, and now has a right to maintain that nonconforming use, is an issue of state law. Id. "[W]hile construction definitely does establish a vested right, mere preliminary work, including filing of a building permit, does not. In situations falling between these two extremes, courts must engage in a fact-sensitive analysis to determine whether vested rights have accrued prior to application for a building permit or construction." City of New Haven v. Flying J., Inc., 912 N.E.2d 420, 426 (Ind. Ct. App. 2009).

Vested rights can accrue before construction has begun or any applications are filed with a governmental agency. Pinnacle Media, LLC v. Metropolitan Dev. Comm'n of Marion Cnty., 868 N.E.2d 894, 900 (Ind. Ct. App. 2007) (citing Metropolitan Dev. Comm'n of Marion Cnty. v. Pinnacle Media, LLC, 846 N.E.2d 654, 656–657 (Ind. 2006)).

Angola responds that the vested rights doctrine only applies to zoning ordinances, and no authority supports BBL's proposition that the doctrine applies to licensing and regulatory ordinances, like Ordinance 1418-2012. Angola argues that vested rights don't prevent a city from regulating an activity to promote the health, safety, and welfare of its citizens. The court agrees. In Uniontown Retail, a sexually oriented business violated an ordinance that required a sexually oriented business to obtain a license to operate and to not be located within 1,000 feet of a residence. 950 N.E.2d 332, 335 (Ind. Ct. App. 2011). The business opened three days after the ordinance became effective, but, nonetheless, the court held that the business didn't meet its burden of proving that it was operating a lawful business at the time of the ordinance's adoption because of the ordinance violations. Id. at 339. The vested rights doctrine only applies to zoning ordinances, Plaza Grp. Props., LLC v. Spencer Cnty. Plan Comm'n, 877 N.E.2d 877, 884 (Ind. Ct. App. 2007), and the court already has decided in this opinion that the licensing and regulatory ordinance, Ordinance 1418-2012, isn't a zoning ordinance. See section I., subsection B.

Thus, the vested rights defense only remains as to the Unified Development Ordinance amendments.

Angola next argues that BBL can't establish a vested right because BBL didn't begin construction lawfully. A nonconforming use must be lawful on the effective date of the zoning restriction. Uniontown Retail #36, LLC v. Board of Comm'rs of Jackson Cnty., 950 N.E.2d 332, 339 (Ind. Ct. App. 2011); Wesner v. Metropolitan Dev. Comm'n of Marion Cnty., 609 N.E.2d 1135, 1138 (Ind. Ct. App. 1993). A party in violation of a building permit ordinance isn't entitled to lawful nonconforming use status on the property. Plaza Grp. Props., LLC v. Spencer Cnty. Plan Comm'n, 877 N.E.2d at 887; Bird v. Delaware Muncie Metro. Plan Comm'n, 416 N.E.2d 482, 487-488 (Ind. Ct. App. 1981). The zoning restriction that made BBL's use of the property nonconforming – Unified Development Ordinance amendments – Ordinance 1425-2015, was adopted by the Angola Common Council on November 19, 2012.

Angola asserts that on October 1, 2012, Mr. Twitchell saw that Showgirl had removed the wallboard and several studs from a load bearing wall at the east side of the banquet room and was constructing a new partition wall in the kitchen area. According to Mr. Twitchell, "[r]emoving studs from a load-bearing wall is an alteration that affects the structural safety and compromises the structural integrity of the building and is subject to Design Professional requirements and Design review by the Indiana Department of Fire and Building Services, Plan Review Division, and approval by City building code

officials." Further, the new wall partition "also required Design review by the Indiana Department of Fire and Building Services, Plan Review Division, State construction design release requirements, and an Angola building permit." BBL doesn't dispute that a construction design release from the State of Indiana and a building permit from the City of Angola were required for BBL to lawfully perform the construction observed by Mr. Twitchell.

BBL asserts that the Building Commissioner visited the premises constantly and he orally permitted Mr. Butler to change out the east wall and put up a partition wall in the kitchen area. In his affidavit, Mr. Butler stated that "Mr. Twitchell approved the removal of the two interior walls near the front (East) side of the building and installing support beams, which I have done." Mr. Butler's son, James Butler, testified at the preliminary injunction hearing that "we asked [Mr. Twitchell] if we could take the [east] wall down, and he didn't have any problems with it," Mr. Twitchell told the crew they did a good job changing out the wall, and Mr. Twitchell gave his father, Mr. Butler, permission to put up the partition wall. At the hearing, Mr. Butler testified that Mr. Twitchell approved the removal of the load bearing wall. The parties dispute whether Mr. Twitchell told Mr. Butler to cease work on the premises or verbally permitted the construction. Mr. Twitchell claims he instructed Mr. Butler's employees to stop renovating the property; Mr. Butler and his son claim Mr. Twitchell never ordered the work to stop during any of his visits.

-68-

Angola claims Mr. Twitchell's statements are irrelevant because estoppel doesn't run against a government based on statements, even if erroneous, of a government official in the performance of governmental functions. "The doctrine of equitable estoppel requires three elements: (1) lack of knowledge and of the means of knowledge as to the facts in question, (2) reliance upon the conduct of the party estopped, and (3) action based thereon of such a character as to change his position prejudicially." Johnson Cnty. Plan Comm'n v. Tinkle, 748 N.E.2d 417, 419 (Ind. Ct. App. 2001). As a general rule, a governmental entity, such as the City of Angola, cannot be estopped by the unlawful acts of public officials, such as Mr. Twitchell, with one exception – when the public interest will be threatened. Id. at 419-420. For the City of Angola to be estopped from enforcing the building permit requirement against BBL due to Mr. Butler's reliance on Mr. Twitchell's alleged statements, BBL would have to assert the elements of estoppel and the public interest that would be threatened by enforcement of the requirement. BBL didn't do so, and the court declines to complete the legal argument on BBL's behalf. *See* White Eagle Coop. Ass'n v. Conner, 553 F.3d 467, 476 n.6 (7th Cir. 2009) ("[I]t is not the province of the courts to complete litigants' thoughts for them."). Although Mr. Twitchell's statements are disputed, without an estoppel argument, those disputed facts aren't material to this issue.

BBL applied for a construction design release from the State of Indiana on October 18, 2012 that was granted on November 15, 2012, but as of

September 18, 2013, BBL hadn't applied for a building permit from the City of Angola. Without the building permit, BBL was, and still is, in violation of the building permit ordinance and couldn't have lawfully performed the construction Mr. Twitchell saw on the property on October 1, 2012. On November 19, 2012, when the Angola Common Council adopted the amendments, the zoning ordinance that made the use of the property nonconforming, BBL was in violation of the building permit ordinance, so BBL isn't entitled to lawful nonconforming use status. Plaza Grp. Props., LLC v. Spencer Cnty. Plan Comm'n, 877 N.E.2d 877, 887 (Ind. Ct. App. 2007). Accordingly, the court declines to address the parties' arguments regarding whether the construction that occurred before the ordinance was enacted created a vested right and whether Mr. Butler's expenditures were sufficient to show a vested right in the property under Indiana law. BBL isn't entitled to summary judgment on its vested rights defense.

## IV. MOTION FOR PRELIMINARY INJUNCTION

The plaintiffs seek a preliminary injunction prohibiting the defendants' enforcement of any ordinance that would prevent Showgirl from operating on the premises. "In order to obtain a preliminary injunction, the moving party must show that: (1) they are reasonably likely to succeed on the merits; (2) no adequate remedy at law exists; (3) they will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the respondent will

suffer if the injunction is granted; and (4) the injunction will not harm the public interest." <u>Joelner v. Village of Washington Park, Illinois</u>, 378 F.3d 613, 619 (7th Cir. 2004). Violation of First Amendment rights constitutes irreparable harm, and protecting First Amendment rights is always in the public interest. <u>Christian Legal Soc'y v. Walker</u>, 453 F.3d 853, 859 (7th Cir. 2006). "[I]n First Amendment cases, the likelihood of success on the merits will often be the determinative factor." <u>ACLU of Illinois v. Alvarez</u>, 679 F.3d 583, 589 (7th Cir. 2012). BBL consequently focuses its argument exclusively on the merits of its case and asserts four arguments: the ordinances are unconstitutional either as content-based restrictions on speech and expression or as content-neutral restrictions that are not unrelated to the suppression of speech; the licensing and regulatory ordinance fails to provide sufficient alternative avenues of communication; the improvement location permit requirement and the ordinances are unconstitutional prior restraints on First Amendment activity; and BBL has a vested right to open and operate Showgirl upon the premises. Angola contends BBL can't show a reasonable likelihood of success on the merits.

The court addressed all four arguments in the previous discussion and concluded that: the ordinances are narrowly tailored content-neutral restrictions that were enacted to further the substantial state interest of preventing the negative secondary effects associated with semi-nude dancing establishments; a genuine dispute as to a material fact exists and neither party

is entitled to summary judgment on the adequacy of the alternative sites required for a content-neutral time, place, and manner regulation to pass intermediate scrutiny; neither the repealed version of § 5.66 nor § 9.05, both of which contain improvement location permit requirements, were prior restraints on the operation of a semi-nude dancing establishment; and BBL wasn't using the property in a lawful nonconforming way on the date the ordinance amending the Unified Development Ordinance was enacted and so didn't establish a vested right to open and operate Showgirl on the premises. Only the sufficiency of adequate alternative sites argument has any chance of success on the merits, and the court isn't persuaded that BBL is reasonably likely to succeed on this claim based on the conflicting expert reports now before the court. Construction ceased at the premises in October of last year while the parties began this dispute regarding whether Showgirl may operate a semi-nude dancing establishment on the property. Maintaining that status quo until that question is answered, is best for both parties. In the interim, BBL will lose potential profits, but BBL may save construction costs on a business that ultimately may not be able to operate at the location.

## V. CONCLUSION

For the foregoing reasons, the court DENIES the plaintiffs' motion for preliminary injunction (Doc. No. 42), DENIES the defendants' motion for partial summary judgment (Doc. No. 35), DENIES the plaintiffs' request for summary

judgment pursuant to Federal Rule of Civil Procedure 56(f)(1), and GRANTS in part and DENIES in part the defendants' motion for judgment on the pleadings (Doc. No. 31). The plaintiffs' First Amendment claim on the sufficiency of adequate alternative sites and claim for costs and attorney fees pursuant to 42 U.S.C. § 1988 survive.

SO ORDERED.

ENTERED:  <u>December 31, 2013</u>

<u>/s/ Robert L. Miller, Jr.</u>
Judge
United States District Court